Case No. 241667, USA v. Corwin Jett Jr. Argument not to exceed 15 minutes per side. Ms. Aker, you may proceed. May it please the Court, Sophia Aker on behalf of Mr. Corwin Jett. I would like to reserve three minutes for rebuttal. You may. Thank you, Your Honor. What makes this case unique is the extraordinary length of time between Mr. Jett's offense of conviction and arrest for that conduct. By failing to adequately account for this almost three-year gap when fashioning its sentence, the District Court committed two errors that warrant remand for resentencing. First, the Court erroneously denied Mr. Jett an acceptance of responsibility reduction because it based its decision on conduct that was irrelevant under the guidelines and that occurred more than three years after the offense of conviction. So is this a... Are you arguing that as a matter of law, if it's not relevant conduct, it can't be considered in assessing acceptance of responsibility, or is it something else? No, Your Honor. So when we talk about relevant conduct, there's a few different meanings of that term. First, there's relevant conduct under the guidelines under Section 1B1.3, and that's a term of art. And then there's relevant in the colloquial sense, meaning germane to whether Mr. Jett accepted responsibility. We argue that because Section 3E1.1a is unambiguous and under Riccardi, this Court interprets the sentencing guidelines according to their plain text. And if that text is unambiguous, we don't need to resort to the commentary. And as this Court stated in merit, Section 3E1.1a is unambiguous. Consistent with this Court's statement in Hollis, the statement clearly demonstrates acceptance of responsibility for his offense, means accepts responsibility for the offense of conviction. Here, that's Mr. Jett's 2020 methamphetamine distribution offense. The conduct that a district court considers when evaluating this acceptance of responsibility for that 2020 methamphetamine distribution offense must have some bearing on his acceptance of responsibility for the relevant offense here. When we're talking about relevant conduct under the guidelines, that's when we might look to the application notes. If this Court... But why doesn't his later drug activity, both, I guess, shortly before he entered his plea and after entering his plea, why isn't that relevant to the question whether he has accepted responsibility for the drug offense? So, Your Honor... The methamphetamine offense, to be clear. I believe Your Honor is referring to the cited K2 offense when Mr. Jett allegedly smuggled a synthetic form of marijuana into pretrial detention. This is an unrelated, uncharged offense that took place more than three years after the offense of conviction. Right, but three weeks prior to his pleading guilty... I could be wrong about the timeline, but shortly before pleading guilty and then there's more conduct shortly after his having pled guilty. Yes, Your Honor. So, first, we have the fact that the K2 conduct is temporally remote from the offense of conviction, but it also occurred after significant intervening, mitigating conduct that does affirmatively demonstrate Mr. Jett's acceptance of responsibility for the offense of conviction, which is the only offense that we care about when we're looking at the plain text of the guideline. If the guideline does more, is intended to do more than simply ask that he plead guilty, right? And the cases say that, right? So it's not enough just to plead guilty, and what you're looking for is acceptance of responsibility, which includes your conduct after the event. So why can't the judge consider that after the event, after this couple of years of apparently good behavior, the person before him right then appears not to accept responsibility for his drug involvement? So, I'm sorry, Your Honor, could you repeat the question? Why isn't it proper? Why does it matter whether it's relevant conduct under the guidelines? You're focusing on whether the person in front of you accepts responsibility and whether you should give them a break for that. So why does it matter that it's three years later, it's a different drug, or the rest of it? So, Your Honor is of course correct that the guideline doesn't just take into account whether a defendant pleaded guilty, and here Mr. Jett did more than simply plead guilty. For instance, on the day of the 2020 government raid, he timely waived his Miranda rights and was forthcoming with investigators about the specific quantities of drugs he possessed, and then additionally he withdrew from an environment where he was surrounded by poor influences. He cut ties with his former drug trafficking associates and moved to Atlanta to forge a new legitimate lifestyle for himself and his children. That included maintaining legitimate employment, mentoring with the Boys and Girls Club, and working hard to save money for an apartment he could rent with his children. So the district judge can take into account all of that behavior, which is subsequent to the methamphetamine offense, all the good things that he did while he was in Atlanta, presumably unbounded by time, but then can't consider the bad things that he did closer to the time of the plea? I guess that's what I'm struggling with. Well, the problem here is that the district court almost exclusively focused on this K2 offense. The sentencing hearing essentially turned into a mini trial adjudicating Mr. Jett's involvement in the K2 conduct and failed to consider... Isn't that because that was the only defense that he raised? At the sentencing hearing, if you read the transcript, the attorney basically says, well, Mr. Jett wasn't involved in the K2 conduct, and if you find that he wasn't involved, then he should get the acceptance of responsibility. So the only... The negative inference from that is, and if he was involved, then he's not entitled to it. And that's the only argument that was presented to the district court. Well, Your Honor, Mr. Jett's offense counsel also mentioned the positive aspects of Mr. Jett's affirmative demonstration of acceptance of responsibility, including his time in Atlanta and the fact that he was doing much better before the K2 conduct occurred. He also stated that he understood the acceptance of responsibility decision would be based on conduct occurring far later than the offense of conviction in this case. I would like to turn to some of the district court's analysis that was also erroneous in this case. So it's our position that because Section 3E1.1A is unambiguous under Riccardi, it's not necessary to resort to the application notes. But if this court finds the guideline genuinely ambiguous, the district court still must apply the application notes in a manner that does not contravene the plain text of the guideline itself. And it must apply them correctly. Here, the district court cited one application note, note 1A, which directs courts to consider whether a defendant falsely denies his involvement in any additional relevant conduct for which he's accountable under 1B13. It then reasoned that because it believed Mr. Jett had lied about his involvement in the K2 conduct, he therefore had denied additional relevant conduct for which he was accountable under 1B13, and the reduction was not warranted. This was error as the K2 conduct is not relevant conduct within the meaning of Section 1B13. It was too temporally remote. This court has held in cases like Hill and Shock that subsequent events that occur a year after the offense of conviction or 19 months after the offense of conviction are too temporally remote to constitute relevant conduct within the meaning of 1B13. Is that how you... So we have a fair amount of case law that suggests if you are indicted and plead guilty to a drug offense and then you engage in drug conduct, that that can be taken into account to show you didn't have acceptance of responsibility. So how do you distinguish that healthy amount of precedent that seems to cut against you? So I'd like to first say that most of the cases the government relies upon for that proposition are unpublished. In the only two published cases, one, Reed, was decided some 30 years before Riccardi. The other, Merritt, was decided after Riccardi, but was entirely distinguishable because it involved obstruction of justice and fleeing authorities. The other cases are distinguishable because they have a much shorter time gap between offenses. The court in those cases relied upon the fact that the defendants were engaged in continued criminal conduct and had not turned away from the lifestyle underlying their offense of conviction. Because the subsequent offenses occurred three months later in Reed, six months later in Love, within the same year in Wiley and Taylor, here we have a more than three-year gap and also significant intervening mitigating conduct that makes this case distinguishable as Mr. Jett did turn away for a period of time from the conduct underlying his offense of conviction. Did anything in those cases turn on the time gap? I mean, did the court analyze the gap in time or lack of a gap in time in any of those cases? Do we consider that relevant? The court did focus on continued criminal conduct and this idea of turning away from your prior criminal lifestyle. And the fact that there are no cases that are squarely on all fours factually with this one just underscores the fact that this time gap is highly unusual. The government even conceded that at sentencing. And so Mr. Jett's positive conduct during that time gap simply cannot be ignored. This court has made clear that it cares about acceptance of responsibility for specific criminal behavior, not punishing defendants for a general criminal disposition. Why do you think, so you make good arguments for why the district court originally should have allowed for acceptance of responsibility, but I think since you filed your opening brief, we've clarified that it's a very deferential standard. Why do you think these arguments are so compelling that we could see that, whether it's clearly erroneous or some other deferential standard, why this would be a clearly erroneous finding? I think there's evidence either way. That's the point. A district court commits clear error when it relies on a misapplication of the governing law or considers irrelevant factors when making a factual determination. And that's what the court did here. First, by misinterpreting the application note 1A and second, by relying on conduct that's outside the scope of the limited 3E1.1A inquiry in the first place that the court was supposed to stick to under Riccardi. And for the reasons discussed today and those in our briefs on both of our arguments, we respectfully request this court vacate Mr. Jett's sentence and remand for resentencing. Okay, thank you. We'll hear from the government. May it please the court, Vito Salitro on behalf of the United States. The judgment of the district court should be affirmed in its entirety. Despite the words from his guilty plea, the defendant's actions both before and after he pled guilty showed that he did not clearly accept responsibility. And it is irrelevant whether the defendant's actions smuggling K2 into the Nuevo County Jail constitute relevant conduct or not. This court has never said that it must constitute relevant conduct. In fact, in the Taylor case, it said the opposite. It said whether such conduct can be considered relevant conduct under 1B13 has no bearing on the determination under Section 3E1.1. And in the drug context, I agree with Judge Murphy. There is a healthy amount of precedent here. The only similarity test that we look at is not the test of whether it constitutes relevant conduct or not. It's a test set forth in the court's decision in Morrison. And in Morrison, the court simply held that it must be of the same type. There are various other examples of why it may justify the loss of acceptance or why it may be related enough. But the relevant inquiry under Morrison is whether it's the same type. In the context of drug crimes, it doesn't have to be the same conduct. It doesn't have to be the same drug. In the Searer case, it involved a conspiracy. The offense conduct involved a conspiracy distributement. Counsel, I mean, if one asks the question, did this defendant accept responsibility for the offense conduct? I mean, he immediately did. He was forthcoming with everything. He goes away. He lives an exemplary life. He comes back. He does not fight the charge. And he accepts responsibility. You know, at what point do you draw a line between the actual offense and then what comes after? So you're basically saying that if you commit another offense, that's it. It doesn't matter how helpful you were to the police or how much you accepted the responsibility. I mean, it becomes sort of, it's almost like your future behavior decides everything, not the offense and whether you accepted responsibility. I don't think, Your Honor, that we're saying that it doesn't matter that future actions, that the positive here doesn't matter. It's just that the defendant's negative actions, and I think there are three different categories of negative actions here. Trying to smuggle the K2 in before the plea, denying it to the probation officer when given the opportunity, faced with the evidence and given the opportunity to recant. And third, his actions one week before sentencing doing the exact same conduct. The line that this court has drawn is the line in Morrison, whether it's the same type. Morrison involved an incident of where the individual was, the offense conduct was felon in possession of a firearm, and the conduct that was talked about in terms of loss of acceptance was him stealing a truck. And that's the line that the court has drawn. But, counsel, you're not arguing that a district court would abuse its discretion by granting the reduction even if there was subsequent drug conduct, right? So, in other words, when you say that's the line this court has drawn, do I hear you saying we would have to say, oh, well, you abused your discretion by granting it, or are you saying it's within the district court's discretion to balance the good behavior that the defendant engaged in against the later bad behavior and come up with some sort of a balance? I believe it is within the court's discretion. You're not arguing for a bright line, once you've done a bad thing, you must ignore all the good things? Absolutely not, Your Honor. And I think it's troubling as a prosecutor when you have a defendant who pled guilty, who saved you a tremendous amount of resources, and him not to get acceptance. But here, the defendant gave us no choice. He continued to double down that he was not involved in this conduct, even despite being faced with clear evidence to the contrary, and he did it again one week before sentencing and denied it even at the sentencing hearing. It's not obvious. So I agree with you, he didn't accept responsibility for the K-2 offense, but he wasn't charged with that offense. It's about whether he accepted responsibility for the earlier offense. And I'm curious, so the first step in interpretation is just what does accept responsibility mean? And why is it, if a defendant agrees, admits, confesses to committing the crime, the defendant says, yes, I did this drug manufacturing, you should punish me. Why is the fact that the defendant then commits another crime, why does that show that the defendant hasn't accepted responsibility under the ordinary meaning of that phrase, which I take to mean just acknowledge that you did it? What does the conduct have to do with that question, or am I misinterpreting what the thing means? I don't think you're misinterpreting it, Your Honor. I think it's the language that the court has used many times before and the court used in Redmond, which is it shows that the defendant has not turned away from the lifestyle that led to his original drug offense. But why does that matter? It matters because... I know our precedent says it matters, but I'm just curious as an original matter why it matters. I think it's helpful to think about this outside of the context of a drug offense. So, for instance, if this were a robbery and the individual committed a bank robbery and he later, while on bond, committed, before and after a guilty plea, committed other bank robberies, we would all say by continuing to rob banks, he's showing that he's not really contrite for the original offense. That's what I'm saying. Accepts responsibility has some type of connotation that the criminal defendant must recognize that the nature of the conduct was wrong or immoral or whatever you want to call it. Yes, Your Honor, and contrition. And I think the court has continuously focused on contrition, the defendant's contrition. Why is that in the phrase acceptance of responsibility? I wouldn't necessarily... I mean, if you were a literalist, I suppose, maybe it's in context, that's how we should interpret it. But I would think a literalist approach would just be accept means something like agree with and then responsibility is something like you did it. I don't know. That's the way I would interpret it. I think if the court, if it were to accept that interpretation, meaning let's limit it just to the offense and just whether he said he did the offense or not, then I think you run into the bright line of he pleads guilty, he gets these three levels. And the guidelines are clearly not that. I think it's also helpful to look at the history of the guideline and how the language has evolved. So the Morrison case, which was a published decision, came immediately after the guideline change. The old version said responsibility for his criminal conduct and used a very broad language, responsibility for his criminal conduct. And then the new version, which is still the version intact today, clearly accepted responsibility for his offense. Nonetheless, in Morrison, the court interpreted it as meaning that he did not commit offenses that are of the same type of offense. So I think the plain language shows that if the defendant engages in actions that are of the same type, he did not show clear acceptance of responsibility. And it's clear acceptance of responsibility. It's the defendant's point of view. I mean, your argument has to be that acceptance of responsibility means something like recognizing that the conduct is wrong. And then if that's the test, then I think I could see why you're not really recognizing that the conduct is wrong if you continue to engage in similar conduct. I completely agree, Your Honor. But then that's the key question. Does acceptance of responsibility have a narrow meaning of just acknowledge that you did the conduct of which you are charged, or should it have this kind of moralistic loss that it also means what you said, a contriteness or wrongness of the general conduct? I think if the guideline writers, if the Guideline Commission and the courts wanted to enact a standard that was a bright-line standard, plead guilty, get three levels, it clearly could have done that. And the language of the guideline doesn't say it. It says clearly demonstrate acceptance of responsibility, which is why we have this healthy amount of precedent on this issue and why in cases in which individuals have engaged in the same conduct, they are continuously denied acceptance of responsibility. And I think even here our facts are much stronger than some of the other cases. In Redmond, there was no evidence that the individual actually succeeded in smuggling drugs, let alone do it twice. In Sear and in the Taylor case, we have individuals just testing positive while out on bond. Here there are three major events which undermine the defendant's acceptance of responsibility. What do you make of the argument that those cases are distinguishable because of the time gap in this case? I don't think that makes any difference. I think that only makes a difference if you're holding it to the standard that it needs to constitute 1B.1.3, relevant conduct, and there has to be a similarity, regularity, and temporal proximity. So there's no indication that there is a time consideration in whether the defendant's actions justify the loss of acceptance. So unless the court has any other questions, the government respectfully requests that the judgment of the district court be affirmed. Thank you. All right. We'll hear rebuttal. Good afternoon, Your Honors. Alexander Lopez for Mr. Jett with two points on rebuttal. First, the interpretation that the government offers runs afoul of recording, which says that if the guidelines is plain and the text is plain, we don't even need to look at the commentary. And here the guideline clearly says that the defendant only needs to accept responsibility for his offense, not for criminal conduct generally or not for all offenses that the defendant commits. So here the defendant is essentially trying to turn the question of did Mr. Jett accept responsibility for meth trafficking into did Mr. Jett accept responsibility for the K2 conduct. That is plainly impermissible. And second, the government cites some cases which should not have any bearing on the inquiry here. I will go through them individually. First, Taylor. There, the court was responding to a completely different and erroneous argument the defendant was making. The defendant was essentially saying that to determine what is related conduct, we look at Section 1B1.3. But that is wrong. Relatedness goes into more reason, which I'll explain later. But here, the district court clearly misinterpreted and impermissibly inflated the meaning of Application Note 1A. What's wrong with governments? I take it the government's position is just the plain text of the regulation. Acceptance of responsibility under your view has a narrow meaning. But it could have this contriteness meaning that it showed that the defendant recognizes the wrongful nature of the conduct. And if that is the meaning, it's hard for me to see why there would be error here, because engaging in the conduct again suggests that the defendant isn't recognizing the wrongness of the conduct. So I think there are two issues with that position, Your Honor. So first, with concreteness, it still has to be concreteness for the offense of conviction, if we're following the plain text of the guidelines. And second, the record doesn't support the government's position that Mr. Jett did not show concreteness for meth trafficking. For example, he confessed to investigators at the scene of the crime that the controlled substance was meth trafficking. He also, like, stated to the PSR and the district court that he learned about how his conduct was wrong because he spread poison into the community, and how he learned by turning his life around that he could be happy without the need to sell drugs. Mr. Lopez, what if instead of smuggling K2, he had continually engaged in meth trafficking, but three years later, he goes back to meth trafficking? Would that fail to show a lack of contrition? I think so, Your Honor. That would be a stronger argument, specifically under Morrison, because Morrison says that if you commit the exact same type of offense, may I finish your question? The exact same type of offense, then you clearly have not demonstrated acceptance of responsibility. But again, there's a three-year gap here showing clear demonstrations of acceptance of responsibility, which is all Mr. Jett needed to show. All right, any further questions? Thank you, Your Honor. Thank you, Mr. Lopez and Ms. Acker. I understand you are both law students. You have acquitted yourself remarkably well for law students or for any attorney, so I just wanted to thank you both for your helpful arguments. And Ms. Salinas, thank you for always preparing the students so well. We will take the case under submission.